**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| DARRYL E. FIELDS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-16-213-KEW |
| | ) | |
| BNSF RAILWAY COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

This matter comes before the Court on (1) Plaintiff's Motion for Partial Summary Judgment (Docket Entry #112) and (2) Defendant's Motion for Summary Judgment (Docket Entry #113). On March 19, 2015 at approximately 3:55 p.m., Plaintiff Darryl Fields ("Fields") came on duty acting as a conductor on train C-CKMIOG0-26 for the owner, Defendant BNSF Railway Company ("BNSF") hauling coal from Madill, Oklahoma to Fort Worth, Texas. The locomotive engineer on the run was Trai Burt ("Burt"). Before departing, it was determined that the engine needed to be switched out. The engine was placed at the head end of the train. The decision for the placement of the engine was jointly made by Burt and Fields but the ultimate responsibility for the placement rested in Fields as conductor on the train.

When the train left Madill, Oklahoma, the weather was dry but it began to rain during the trip. When the train began ascending

1

a location known as Denison Hill near Denison, Texas, the locomotive engines began to slip and the train began to break apart causing the train to go "in emergency" whereupon Burt had to "back off his engines a certain way . . . just to make sure he's stopped" and the personnel can then "fix what happened".  Fields got his gear together, consisting of a light, a jacket, and eye protection and walked back to inspect the train.  He walked back 11 or 12 cars and found the train to be split due to a broken knuckle on freight car FURX960348.  The cars were separated by the length of a car and a half.  Fields contacted Burt by radio and relayed the type of knuckle that was broken.  Burt got off of the locomotive engine and threw off a replacement knuckle on the side of the rail together with some tools.  He then pulled the train forward with Fields riding in the rear car of the front portion of the broken train in order to transport the using the train to carry the replacement knuckle rather than having to carry it.

 Fields then took the broken knuckle out of the coupler and put in the new knuckle that Burt had offloaded from the train. Fields told Burt to back up the front half of the train a car and a half in order to recouple the cars.  Fields thought that the cars had coupled but when he told Burt to "stretch it" – pull the train forward to test the joint – the joint came back open again. Fields told Burt to back up a half car to the joint in order to

2

couple again.  He told Burt to "stretch" the train again and the joint opened again.  Fields told Burt to move ahead a car and a half and told him that it must not be the right type of knuckle. Fields believes that he walked up and either he or Burt took another replacement knuckle off of the train.

Fields walked back and told Burt to back the train up and stopped him a car and a half length from the location of the break in the train.  He took the knuckle off of the car and set it aside. Fields took the new knuckle and tried to put it in the car but "it kind of went in cockeyed a little bit."  Fields had to pull the knuckle back and he was going to try to put it in again.  Burt was walking down to Fields' location.  As soon as Fields got ready to push the knuckle back into place, his injury allegedly occurred. He told Burt to move because he was going to drop the knuckle.

Later, Bobby Beal ("Beal"), who worked in BNSF's mechanical department, went to the scene of the train separation.  He met Burt who told Beal that they had tried to put the knuckle in three or four times but that it would not go in.  Beal determined that Fields and Burt had attempted to put an E-type knuckle in an F-type knuckle coupler, which "won't work."  In doing so, they had bent the inside of the coupler which required Beal to cut it out and put a knew lock lift and lock in it.  Once he accomplished this, the train was "good to go."

Beal confirmed that the replacement of a knuckle is a one man job. The knuckles weigh approximately 80 pounds, regardless of whether they are an E-type or F-type knuckle.

On May 26, 2016, Fields filed the initial Complaint in this case which was subsequently amended on March 5, 2020. Fields alleges that (1) BNSF was negligent in various specified respects in violation of the Federal Employers' Liability Act ("FELA"); and (2) BNSF violated the Federal Safety Appliance Act ("FSAA") in the use of the failed knuckle in this case and failure to inspect the knuckle thereby subjecting it to strict liability, all resulting in and causing Fields' injuries.

Under Federal Rule of Civil Procedure 56(c), summary judgment shall be granted if the record shows that, "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The moving party has the burden of showing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553-54, 91 L.Ed.2d 265 (1986). A genuine issue of material fact exists when "there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 2510-11, 91 L.Ed.2d 202 (1986). In determining whether a genuine issue of a material fact exists, the evidence is to be taken in the light

4

most favorable to the non-moving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). Once the moving party has met its burden, the opposing party must come forward with specific evidence, not mere allegations or denials of the pleadings, which demonstrates that there is a genuine issue for trial. Posey v. Skyline Corp., 702 F.2d 102, 105 (7th Cir. 1983).

Fields first seeks partial summary judgment, contending (1) BNSF's violations of certain statutory and regulatory requirements establish strict liability under the FSAA and negligence *per* se under the FELA and will preclude a contributory negligence defense to the claim by BNSF; and (2) the statutory and regulatory violations were the cause of Fields' injuries thereby establishing the element of causation on both the FELA and FSAA claims.

In its summary judgment motion, BNSF asserts (1) Fields presents no evidence that BNSF was negligent under FELA; and (2) Fields has no evidence of an FSAA violation.

### FSAA Claim

FSAA is considered an amendment to the FELA. It does not create an independent cause of action, but railroad employees may recover for a violation of the FSAA under FELA. Makovy v. Kansas City Southern Co., 339 F.Supp.3d 1242, 1245 (E.D. Okla. 2018) citing Crane v. Cedar Rapids & Iowa City Ry. Co., 395 U.S. 164,

166 (1969). In order to prevail on his claim under the FSAA, 49 U.S.C. §§ 20301-20306, Fields must only prove a statutory violation and not negligence. He "must prove that the statutory violation was a causative factor contributing in whole or in part to the accident that caused [his] injuries." Id. citing Grogg v. Mo. Pac. R.R. Co., 841 F.2d 210, 212 (8th Cir. 1988).

In a well-reasoned and well-written opinion from Judge Ronald White from this District, the requirements for imposition of liability under the FSAA are clearly established. Judge White wrote in Makovy, *supra* at 1245-46:

> As to statutory violation, the Supreme Court has held as a matter of law that the failure of couplers to remain coupled until released constitutes a violation of 49 U.S.C. § 20302(a)(1)(A). *See* O'Donnell v. Elgin, Joliet & E. Ry. Co., 338 U.S. 384, 70 S.Ct. 200, 94 L.Ed. 187 (1949). A broken knuckle causing couplers to separate thus falls within the Court's reasoning. *See* Kukowski v. Soo Line R.R. Co., 2018 WL 834235, *14 (D.Minn. 2018)("Under the clear language of O'Donnell, a knuckle which fails to remain coupled until released constitutes a *per se* violation of the FSAA").

No dispute in the facts exists that the failure of the knuckle which Fields replaced occurred, causing freight car FURX960348 to uncouple from the rest of the train. BNSF attempts to draw too fine of a distinction in contending that O'Donnell and the FSAA "address couplers and are not specific to the knuckle subcomponent." The component parts necessarily comprise the entire assembly and the totality is brought under the auspices of

the FSAA. Fields is entitled to summary judgment on the issue of liability under the FSAA for a statutory violation.[1]

The issue of causation and damages under the FSAA, however, remains for the jury to determine. The fact the knuckle broke and the removal and replacement of the knuckle was required brings any defect in the part under the umbrella of the FSAA. This does not require the adoption of the "but for" theory of causation rejected by the United States Supreme Court in CSX Transp. Inc. v. McBride, 564 U.S. 685 (2011). Rather, a jury should be permitted to determine whether the failure of the knuckle in violation of the FSAA caused or contributed to Fields' injury. *See* Makovy, *supra* at 1246-47 ("The Supreme Court stated that the causal link was 'hardly farfetched,' but that those courts observed that the evidence did not show mere 'but-for causation'."); *see also* Richards v. Consol. Rail Corp., 330 F.3d 428 (6th Cir. 2003)("[I]f as a result of a defective appliance a plaintiff is required to take certain actions and he or she is injured while taking those actions, the issue of causation generally should be submitted to

---

[1] Fields also contends that BNSF is liable under the FSAA for a violation of 49 C.F.R. § 215.123(c) which precludes a railroad from continuing a car in service "if . . . [t]he car has a coupler knuckle that is broken or cracked on the inside pulling face of the knuckle." While the evidence indicates that the knuckle at issue in this case suffered a fatigue crack according to Mr. Hans C. Iwand, P.E., an expert hired by BNSF, nothing in the evidence on summary judgment demonstrates that the crack occurred "on the inside pulling face of the knuckle."

a jury.").

Additionally, this Court concurs with the court in Makovy that while the contributory negligence defense is not applicable to the FSAA claim, the sole cause defense is available to BNSF. As that court stated, "if the plaintiff's negligence was the sole cause of the injury, then the violation of FSAA could not have contributed in whole or in part to the injury." Id. at 1247 citing Onysko v. Delaware & Hudson Railway Co., Inc., 2017 WL 372235, *4 (M.D. Pa. 2017). Fields initially replaced the knuckle with the wrong type which ultimately led to the replacement of the knuckle a second time when his alleged injury occurred. Given the unique factual scenario presented by this case, it is entirely possible that a reasonable jury could conclude that his injury was directly attributable to the sole cause of his negligence in utilizing the wrong type of knuckle. Consequently, the matter of causation under the FSAA, including the sole cause defense, will be left to the deliberations of the jury empaneled at trial.

### Negligence Under the FELA

BNSF next asserts that Fields has no evidence of negligence on its part such that she may prevail under the FELA. Fields' FELA claim alleges that BNSF is liable under 45 U.S.C. § 51, which provides:

> Every common carrier by railroad . . . shall

>  be liable in damages to any person suffering injury while he is employed by such carrier . . . for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, . . . or other equipment.
>
> 45 U.S.C. § 51.

In order to prevail on his claim under the FELA, Fields must prove:

> (1) the employee was injured within the scope of his employment,
>
> (2) the employment was in furtherance of the employer's interstate transportation business,
>
> (3) the employer was negligent, and
>
> (4) the employer's negligence played some part in causing the injury for which the employee seeks compensation under FELA.
>
> Ezell v. BNSF Ry. Co., 949 F.3d 1274, 1279-80 (10th Cir. 2020) citing Van Gorder v. Grand Trunk W. R.R., 509 F.3d 265, 269 (6th Cir. 2007) and Volner v. Union Pac. R.R., 509 F. App'x 706, 708 (10th Cir. 2013)(unpublished)(adopting Van Gorder's elements).

BNSF contends that Fields has failed to identify any act of negligence justifying recovery under the FELA. Fields first asserts that because BNSF violated the FSAA, it should be held liable under a negligence *per se* theory of liability. This Court

9

concurs with the reasoning in Makovy that the *per se* violation of the FSAA establishes the negligence elements of duty of care and breach of the duty. However, the remaining required elements of foreseeability and causation are in dispute for the jury's consideration. Makovy, 339 F.Supp.3d at 1247-48.

An "essential ingredient" of an FELA claim is whether the harm was reasonably foreseeable by the employer. Gallick v. Baltimore & Ohio Railroad Co., 372 U.S. 108, 117 (1963)(citation omitted). BNSF "may not be held liable if it had no reasonable way of knowing that the hazard, which caused [Fields'] injury, existed." Brown v. CSX Transportation, Inc., 18 F.3d 245, 249 (4th Cir. 1994)(citations omitted); *see also*, Williams v. National R.R. Passenger Corp., 161 F.3d 1059, 1062 (7th Cir. 1998).

In demonstrating causation, the United States Supreme Court has found a "relaxed standard of causation applies to FELA." CSX Transp. Inc. v. McBride, 564 U.S. at 691-92. Under FELA's relaxed standard of causation, "the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought." Id. at 692.

BNSF contends that it had no knowledge of the broken or defective knuckle and, therefore, could not be held liable in negligence. Fields points to the testimony of Mr. Iwand, BNSF's

10

expert. Mr. Iwand testified that it was possible that if the knuckle had been inspected, BNSF would have seen the fatigue crack in the knuckle which was present prior to the March 19, 2015 when the accident occurred.2 This evidence is sufficient to bring the question of the reasonable foreseeability of the defect before the trier of fact.3

IT IS THEREFORE ORDERED that Plaintiff's Motion for Partial Summary Judgment (Docket Entry #112) is hereby **GRANTED**, in part, in that BNSF is found to have violated the FSAA at 49 U.S.C. § 20302(a)(1)(A) and BNSF may not utilize a contributory negligence defense to the FSAA claim at trial. BNSF may present evidence on the sole cause defense. The remainder of the Motion is hereby **DENIED**.

IT IS FURTHER ORDERED that Defendant's Motion for Summary Judgment (Docket Entry #113) is hereby **DENIED**.

IT IS SO ORDERED this 8th day of September, 2021.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE

---

2 Iwand Dep., Fields Exh. No. 5, p. 49, l. 2-8; p. 50, l. 14-16.
3 BNSF also challenges the use of the various standards by Fields' expert, Dr. Morrissey, to impose negligence liability upon it. This Court will address the viability for the basis for Dr. Morrissey's opinions by separate order pertaining to the BNSF's Daubert motion which is currently pending.